THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAWN KYLE, an individual;
DAWN KYLE, Durable General Power of Attorney and
Nomination of Conservator of Estate of Irene
Martin-Thomas;
DAWN KYLE, Durable  Power of Attorney for Health Care
for Irene Martin-Thomas,

                               Plaintiff,                  Case No. 06-12185

vs.

                                               HONORABLE NANCY G. EDMUNDS
                                               HONORABLE STEVEN D. PEPE

NENA MARTIN THOMAS SIMS, an individual;
ROSEMARIE MARTIN, an individual;
MONIQUE KING, an individual;
THE STATE OF MICHIGAN FAMILY INDEPENDENCE AGENCY,
DEPARTMENT OF HUMAN SERVICES,
(fka The Family Independence Agency),
ADULT PROTECTIVE SERVICES, and
DOES 1-10.

                             Defendants.

_____/


## REPORT AND RECOMMENDATION

On June 14, 2006, Plaintiff filed an amended complaint naming the above Defendants for

alleged violations of her rights under the First, Fourth and Fourteenth Amendments pursuant to

42 U.S.C. § 1983 and 42 U.S.C. § 1985 (Dkt. #5).  On September 29, 2006, Defendant Monique

King filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Dkt. #28).  All pretrial matters

were referred pursuant to 28 U.S.C. §  636(b)(1)(A),(B) on August 28, 2006 (Dkt. #21).

Plaintiff did not initially respond to this motion and was ordered to do so in May 2007 (Dkt.

#31).  On May 17, 2007,  Plaintiff indicated she never received a copy of the motion to

dismiss (Dkt. #32).  She subsequently filed a response (Dkt. #32).

For the following reasons, **IT IS RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** and that Plaintiff's Complaint **BE DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for her failure to state a claim upon which relief may be granted.

## I.     BACKGROUND

Plaintiff originally brought this *pro se* action in Wayne County Circuit Court, alleging both state law causes of action and federal civil rights violation pursuant to 42 U.S.C. § 1983. On May 10, 2006, this action was removed from the Wayne County Circuit Court to the United States District Court.  On June 2, 2006, all state law claims were remanded to the Wayne County Circuit Court.  In the same order, the Court ordered Plaintiff to file and Amended Complaint setting out with specificity the constitutional or federal rights that formed the basis of her 42 U.S.C. § 1983 claims.

Plaintiff filed her Amended Complaint on June 14, 2006, alleging violations of her First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.  On June 19, 2006, the Court dismissed the claims against defendant's Nena Martin Thomas Sims and Rosemarie Martin because the defendants were private actors and not acting under the color of state law.  The Court also dismissed the claims against the Family Independence Agency of Michigan, the State of Michigan Department of Human Services and the State of Michigan Adult Protective Services because they were barred by the Eleventh Amendment.  In the same order, the Court found that Plaintiff's claims alleging violations of her Fifth and Eighth Amendment rights failed to meet the requirements of Fed. R. Civ. P. 8(a).  The Court ordered Plaintiff to file a Second Amended Complaint on or before July 5, 2006, or the Fifth and Eighth Amendment claims would be dismissed.  Plaintiff failed to submit a Second Amended Complaint by July 5, 2006, and on

August 29, 2006, the Court dismissed Plaintiff's claims alleging violations of her Fifth and Eighth Amendment rights for failure to state a claim for which relief can be granted.

## A.    Facts involving Defendant, Monique King

Plaintiff, in her verified First Amended Complaint (Dkt. #5) and in her motion response papers (Dkt. #33), asserts the following.  Defendant, Monique King, is a Protective Services Worker employed by the State of Michigan who was sent to investigate allegations by Plaintiff of abuse her mother, Irene Martin (Plaintiff's mother, referred to as Mrs. Martin in the complaint).  Mrs. Martin, who was born April 1917, is a stroke victim with paraplegia, limited use of her right arm and suffers from Alzheimer or some form of dementia. (Dkt. #28, at pp.6 and Dkt. #33 at 5).     On May 12, 1994, prior to Mrs. Martin's medical problems and mental incapacity, Mrs. Martin executed a Durable General Power of Attorney and Nomination of Conservator of Estate appointing Plaintiff as Power of Attorney (Dkt. #5, Ex. C).  Plaintiff contends the Power of Attorney gave her the power to care for and to make decisions for Mrs. Martin.  On January 26, 1999, Mrs. Martin executed a Durable Power of Attorney for Health Care, again appointing Plaintiff as Power of Attorney (Dkt. #5, Ex. D).

Plaintiff alleges that on or about February 26, 2003, Plaintiff, who lives in California, sent Mrs. Martin to live with Plaintiff's sister, Nena Martin Thomas Sims (Sims) in Michigan, with the understanding that Sims would allow Mrs. Martin to have social contact with her family and friends, including Plaintiff.  Upon Mrs. Martin's arrival in Michigan Sims arbitrarily elected to terminate the relationships between Mrs. Martin, certain family members and friends, including Plaintiff.  Plaintiff alleges she made many attempts to check on the welfare of Mrs. Martin, and also made requests to Michigan's Department of Human Services (DHS) to check on Mrs. Martin.

In November 2005, Plaintiff flew from California to Michigan in a largely unsuccessful effort to see her mother. Prior to her trip, because of her inability to see her mother on an October 2003 visit to Michigan, Plaintiff had obtained a September 8, 2005, order from Wayne County Circuit Court Judge Gershwin A. Drain ordering Sims to give Plaintiff access to 3992 18th Street, Ecorse, Michigan, which is her mother's residence. On November 11, 2005, showing the court order to the Ecorse police, Plaintiff entered the 3992 18th Street, Ecorse, residence and visited her mother for 15 minutes. When she returned the next day, her mother had been moved to the residence in Detroit another daughter of Mrs. Martin, Rosemarie Martin, which address was not covered by the circuit court order. Rosemarie Martin and Nina Sims refused Plaintiff admittance even though Plaintiff had summoned the Detroit Police to accompany her and showed them her power of attorney and apparently the court order.

Plaintiff alleges that in or about October 2005 Defendant King defrauded, intimidated and gave legal advice to Mrs. Martin to revoke Plaintiff's Power of Attorney. Plaintiff contends that Defendant's "legal advice" led to the creation of a document dates October 13, 2005, purporting to revoke Plaintiff's Power of Attorney, and that Defendant's legal advice has resulted in dire consequences to both Mrs. Martin and Plaintiff. Defendant King's case file entries note that:

> Client indicated to worker that she never signed any document given [sic] D. Kyle POA. She indicated to this worker that she wants to revoke any document that may given [sic] D. Kyle POA. Worker advised client to have a document written up stating that she did not want D. Kyle to have POA and have it notarized.

(Dkt. #5, Ex. H).

Although she does not mention it in her Complaint,[1] Plaintiff also alleges that Defendant King additionally delivered the "bogus" revocation to the Ecorse Police Department, then faxed the document to Judge Drain's chambers. Defendant allegedly informed the Ecorse Police that Plaintiff should not be allowed to see her mother apparently ending their assistance to Plaintiff in trying to see her mother. Plaintiff further alleges that Defendant used her position as a social worker to seek assistance from the Ecorse Police Department to prevent Plaintiff from seeing her mother. Plaintiff alleges she had to return to California without visiting her mother, Mrs. Martin, beyond the limited November 11 contact.

## II. ANALYSIS

### A. <u>Legal Standards</u>

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007)*, Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"*, Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327(1989)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural*

---

[1]The allegations are contained in Plaintiff's Response to Defendant's Motion to Dismiss (Dkt. #33).

*Res., Inc.*, 58 F.3d at 1109.

"In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also, Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review). *Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless *it appears beyond doubt* that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.) *Twombly*, notes that under a "literal reading of *Conley*'s 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly* 127 S.Ct. 1955, 1968 (2007). *Twombly* rejects this literal reading of *Conley* and required that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley, Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741(1975). Consistent with this clarification by *Twombly*, the Sixth Circuit has earlier noted that "[i]t is not enough for a

complaint under §1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986);[2] *see also, Tahfs v.*

---

[2] *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986):
It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings. *Place v. Shepherd,* 446 F.2d 1239 (6th Cir.1971). Dismissing a civil rights complaint in *Blackburn v. Fisk University,* 443 F.2d 121 (6th Cir.1971), this court found conclusory allegations of unconstitutional acts insufficient, stating:

> There are no facts alleged in support of the conclusions, and we are required to accept only well pleaded facts as true, *L'Orange v. Medical Protective Co.,* 394 F.2d 57 (6th Cir. [1968] ), not the legal conclusions that may be alleged or that may be drawn from the pleaded facts.

*Id.* at 124 (citations omitted).  *Accord, Smith v. Rose,* 760 F.2d 102, 106 (6th Cir.1985).

> There is a sound reason for requiring that a civil rights action against a government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

In *Hobson v. Wilson,* 737 F.2d 1, 29-31 (D.C.Cir.1984), the court discussed some of these considerations, stating:

> Plaintiffs who fail to allege any specific facts to support a claim of unconstitutional motive cannot expect to involve Government actors in protracted discovery and trial. On receipt of such a complaint, Government defendants might move for dismissal or, alternatively, for summary judgment. Then plaintiffs must produce some factual support for their claim to avert dismissal.

*Proctor,* 316 F.3d 584, 590 (6th Cir. 2003) (stating that while the standard for dismissals under Rule 12(b)(6) is liberal, and *pro se* claimants are given special consideration under *Haines v. Kerner,* 404 U.S. 519 (1972), a complaint nonetheless must contain either direct or inferential allegations regarding all the material elements, which must be more than bare assertions of legal conclusions); *Spadafore v. Gardner,* 330 F.3d 849 (6th Cir. 2003) (stating that the complaint must contain more than a bare averment that the Plaintiff "wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a right of action." (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216, at 163 (2d ed.1990)); *Russell v. Tennessee Dept. of Correction,* No. 03-6217, 2004 WL 834741 (6th Cir. April 16, 2004) ("The court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.") (unpublished, citations omitted). *See Ana Leon T. v. Federal Reserve Bank,* 823 F.3d 928, 930 (6th Cir. 1987)(Plaintiff has made only conclusory allegations. Such allegations cannot support an equal protection claim).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *W. v. Atkins*, 487 U.S. 42, 49 (1988) (citing, *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)); *Flagg Bros., Inc. V. Brooks*, 436 U.S. 149, 155 (1978).

**B.        Factual Analysis**

### 1. Standing

Defendant argues in her motion that Plaintiff lacks standing to bring this claim on behalf of her mother because according to Defendant's interpretation, Plaintiff brought the action to enforce her mother's right to issue or revoke a durable power of attorney. Yet, Plaintiff's Complaint is broader than Defendant's interpretation in that all of the claims brought and the relief sought by Plaintiff are based on alleged violations of Plaintiff's rights exclusively. For this reason, Plaintiff has standing, as a *pro se* litigant.

### 2. 42 USC § 1983

#### a. Under Color of Law

Defendant argues in her motion that dismissal of Plaintiff's § 1983 Complaint is mandated because of Plaintiff's failure to allege that Defendant's actions were under color of law. Even though Plaintiff did not include the exact phrase "under color of law", the facts alleged by Plaintiff establish this element under 42 USC § 1983. Plaintiff must show, but not necessarily state, that Defendant was acting under the color of state law. *Atkins*, 487 U.S. at 49. Acting under the color of state law is the, "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Defendant was employed by the State of Michigan Department of Human Services as a social worker and acting in this capacity during the relevant time that Plaintiff alleges Defendant violated her Constitutional rights. For this reason, the element of "under color of law" is sufficiently satisfied for the purposes of this motion barring a dismissal on this point.

**b. Protected Rights**

While it is understandable that Plaintiff would like to continue her relationship with her elderly mother, such a relationship is neither a Constitutional Right nor one secured by the laws of the United States under the First or Fourth Amendment. Assuming that somehow Defendant King thwarted the relationship between Plaintiff and her mother, this too would not amount to a violation of any right protected by the First and Fourth Amendments. Yet as to Plaintiff's Fourteenth Amendment claim, a cognizable liberty interest arguably exists for Plaintiff to have a relationship with her mother without unwarranted state interference.

(1.) <u>First Amendment Claim</u>: As to the First Amendment claim, Plaintiff argues that she has a right to "assemble" with her mother based on her reading of the Amendment: Congress shall make no law . . . prohibiting . . . the right of the people to freely assemble. U.S. Const. amend. I. There is no showing that this unusual interpretation of the First Amendment has ever been read into the First Amendment by any court. Without any precedence for the notion that family visitation is a protected First Amendment Right, Plaintiff fails to state a claim upon which relief can be granted.

(2.) <u>Fourth Amendment Claim</u>: Plaintiff's Fourth Amendment claim alleges that the Defendant's delivery of the revocation of the power of attorney to the Ecorse Police Department and to the State Court presiding over the matter constituted a violation of the Fourth Amendment.[3] The Fourth Amendment provides that people shall be secure against unreasonable

---

[3] Plaintiff's Second Claim for Relief mentions the Fourth Amendment but asserts "Due Process of Law" suggesting she meant to say "Fourteenth Amendment" instead of Fourth Amendment (Dkt. # 5, Par. 11). Her later Fourteenth Amendment claim involved equal protection and not due process. She also makes an Eighth Amendment claim on cruel and

searches and seizures.  U.S. Const. Amend. IV.  Plaintiff's Complaint does not allege any facts that indicate Defendant searched or seized any place, person or property. Nor can any such action be inferred from the facts alleged.  The delivery of a document regarding the revocation of power of attorney is neither a search nor a seizure of Plaintiff's person, place or property.  As a result, Plaintiff failed to plead any violation of her Fourth Amendment rights.

(3.)  <u>Fourteenth Amendment Claim</u>: Plaintiff's last claim pursuant to § 1983 for an alleged violation of her Fourteenth Amendment right arguably states a viable legal claim upon which relief could be granted in appropriate circumstances.  The Fourteenth Amendment provides in pertinent part that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person the equal protection of the laws."  U.S. Const. Amend. XIV.

The Supreme Court has recognized that certain familial relationships deserve constitutional protection from unwarranted state intervention.  *See, e.g. Zablocki v.* Redhail, 434 U.S. 374, 383-386 (1978) (protecting childbirth); *Moore v. East Cleveland*, 431 U.S. 494 (protecting cohabitation with one's relatives); *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816 (1977) (protecting foster parent's rights in the raising and education of children).

Neither the Supreme Court nor the Sixth Circuit has determined that the  relationship of an adult child with an elderly parent is a clearly established constitutional right.  Yet, a decison

unusual punishment which she apparently has abandoned because the such a claim is only available to one convicted of an offense and being punished.

from the Northern District of California recognized a cognizable liberty interest in the companionship between an adult child and her parents which the government can not unreasonably restrict. *Jensen v. Sweet Home One Care Facility*, 2005 U.S. Dist. LEXIS 1711 (N.D. Cal. 2005) (citing *Smith v. Fontana*, 818 F.2d 1411 (9th Cir. 1983 )(the court recognized Jensen's right to have a relationship with his mother without unwarranted interference from the state, but found the state interference to be warranted).

It seems likely that the Sixth Circuit would recognize that an adult child has a right not to have a state official – such as a social worker – unreasonably and without the opportunity for a challenge, to use the power, credibility and access of that official's position to take steps that would preclude that adult child's access to a parent – or at a minimum to an incompetent parent who would be unable to resist such efforts without assistance. Thus, for purposes of this Report, it will be assumed that the Sixth Circuit would adopt the liberty interest recognized by the *Jensen* court to protect the relationship of adult children and their parents from unreasonable state interference. Defendant contends in her motion, however, that Plaintiff "utterly fails to state a violation" of a right conferred by this Fourteenth Amendment.

Yet, Defendant again overstates the facts. Applying the liberal standards applicable for a motion to dismiss, Plaintiff's complaint could conceivably be read to state a claim for which relief could be granted under 42 USC § 1983 for a violation of her Fourteenth Amendment rights to due process prior to interference with Plaintiff's relational rights with her mother.

If an adult child has a liberty interest in a continuing relationship with a parent free from unreasonable state interference, that interest cannot be deprived from Plaintiff without due process of law. The more difficult question in this case is whether the due process protections

involved in cases such as the one here alleged are satisfied by post deprivation process of law, or are adequately protected only by pre-deprivation process.

*Zinermon v Birch*, 494 US 113, 126 (1990), held that an individual who was medicated and mentally disoriented at the time had a right to some due process determination as to his competence prior to a state official accepting his voluntary commitment to a mental institution.

Once a liberty interest is recognized, the *Zinermon* Court outlined the procedure for determining whether predeprivation procedural safeguards were required to address the risk of a wrongful deprivation of that liberty interest. First the court must examine the risk involved. Here there is a risk that a social worker might take steps that would preclude access of one child to a mentally impaired adult parent based on incomplete information or even inaccurate and biased information provided from one or more other sibling. The parent likely would be unaware of such representations and actions and not be in a position to counter them. Also the excluded adult child – whose liberty interests are involved – may also have limited awareness of the facts and circumstances leading to his or her exclusion, although likely would be on inquiry notice that something needs checking. As in *Zinermon*, it is foreseeable that such efforts of some siblings – whether for enhancement of access (i.) to the parent's affections, or (ii.) to a perceived status as the "most caring child", or (iii.) to financial gain through inheritance  – may seek to exclude access to a parent of other siblings and enlist any social worker who is a close and trusted contact of the parent. The risk is also foreseeable that the impaired and dependent parent would likely be strongly influenced by the social worker and likely amenable to her suggestion and any directives. Thus, for a limited number of impaired parents, there is a foreseeable risk that a social worker relying on incomplete or inaccurate information might use her powers to

facilitate the termination of an impaired parents relation with an adult child.

*Zinermon* next considers whether predeprivation safeguards would have any value in guarding against the kind of deprivation that is at risk. *Zinermon* noted that it was "immaterial whether the due process violation Burch alleges is best described as arising from petitioners' failure to comply with state procedures for admitting involuntary patients, or from the absence of a specific requirement that petitioners determine whether a patient is competent to consent to voluntary admission." *Id.* at 136-37. Here too it may be that the predeprivation process due may not require a formal or informal hearing but merely a set of specific standards a social worker need consider prior to "taking sides" in a family dispute to limit or preclude the access of any adult child. The *Zinermon* Court noted the concern was to determine if there were some standards or procedures that could limit the risks of state officials' "abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue." *Id.* at 137. It noted three standards of relevance. Whether the deprivation was unforeseeable. There, as here, the risk of a liberty interest deprivation was foreseeable although the exact time may be less clearly forecast than was the case in *Zinermon*. Second, is a predeprivation process impossible. Here some review panel or structured protocol setting standards seeking input from the adult child affected is feasible in most non-emergency situations before a social worker "takes sides" in a family dispute to limit any adult child's access to a parent. Here, as in *Zinermon*, "there is nothing absurd in suggesting that, had the State limited and guided petitioners' power to [urge Mrs. Martin to rescind Plaintiff's power of attorney] the deprivation [Plaintiff asserts was wrongful]

might have been averted." *Ibid.*[4] Finally, unlike certain random and unauthorized actions of state officials that cannot be predicted or prevented by predeprivation process, it cannot be said that Defendant King's action was "unauthorized" in the sense that it was illegal.[5] As the state official in *Zinermon*, she was delegated by the State "the power and authority to effect the very deprivation complained of here" to consult with clients regarding their well being, although this may have approached the giving of legal advice and not traditional advice of a social worker. *Zinermon*'s concern was that state officials undertaking authorized actions affecting the liberty interests of others are circumscribed by a "concomitant duty to initiate the procedural safeguards set up by state law to guard against" a wrongful exercise of that power. In the present case, a strong argument can be made that additional predeprivation protocol and safeguards were

---

[4] It may be that instead of setting standards or some sort of hearing or review process, the Michigan state agency or the Michigan legislature would totally preclude social workers from "taking sides" and giving any such advice in a family dispute outside of a formal Probate Court guardianship proceeding under MCLA 700.5314 or conservatorship proceeding under MCLA 700.5401(3)(a) & (b). Yet, any such policy decisions on the appropriate limitations are legislative and executive decisions, and are not dictated by the due process clause of the Fourteenth Amendment. They would not demonstrate that a less formal predeprivation process is impossible in such a situation.

[5] Plaintiff's complaint alleges Defendant Kings actions were "outside the preview of her employment" and "not within the course, scope and authority of such agency and employment" (Dkt. # 5, Paragraph 4.). But Plaintiff cites no authority that a social worker cannot advise a client wanting to disavow a power of attorney to have an instrument drawn up and notarized to that effect, or that a social worker is precluded from giving any such instrument to the police or a court. If Plaintiff is correct that Defendant King's actions are unauthorized, then *Zinermon* acknowledges that predeprivation process is impossible for any random and unauthorized action. *Zinermon,* 494 US at 129. In such a case Plaintiff would have no due process claim because only a postdeprivation hearing is possible. *Id.* If no predeprivation process is possible, then the due process clause of the Fourteenth Amendment is satisfied by an appropriate postdeprivation action – such as a state tort remedy for emotional and economic loss or a state declaratory judgment action determining whether a power of attorney revocation attempt was validly undertaken by a competent individual.

possible and appropriate before Defendant King undertook her action in inducing Mrs. Martin to rescind her power of attorney when that was done with the knowledge it would increase the chances that Plaintiff would not have access to her mother.[6] Thus, where a liberty interest can and should be protected by predeprivation process, an adequate postdeprivation remedy is not sufficient to satisfy the Fourteenth Amendment. This is particularly the case where the interest is a liberty interest and not merely a property interest where the adequacy of postdeprivation remedies is greater.

Yet, even assuming that the procedural due process clause of the Fourteenth Amendment requires some minimal predeprivation process, greater than that which was involved here, before state social workers can use their authority, access and persuasiveness to favor certain siblings access to an impaired parent, the analysis of Defendant King potential damages liability does not end here, because Defendant King is asserting that she is entitled to qualified immunity.

### 3. Qualified Immunity

Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an

---

[6] It should be noted that *Zinermon* was a 5-4 decision with Justice Blackman authoring the decision, and the current composition of the Supreme Court would likely be less amenable to imposing predeprivation process in the *Zinermon* situation or present case that the *Zinermon* Court. Yet, *Zinermon* has not been overruled, and this Court's decisions should be base on existing precedent and not on speculation of likely changes in precedent.

affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

When considering the question of qualified immunity, the courts utilize a two-step analysis: 1) whether the facts, considered in the light most favorable to the party claiming injury, establish that the state actor's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)) and 2) if the facts alleged would violate a constitutional right that was clearly established at the time in question. *Id*.; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998).

As stated above, Defendant did not violate Plaintiff's First and Fourth Amendment rights when she of discussed and even urged a revocation of Plaintiff's power of attorney with from her mother and transmitting the purported revocation document to the state court and the local police department. Thus because Defendant is entitled to dismissal of these First and Fourth Amendment claims under Rule 12(b)(6) the Court need not provide her additional qualified immunity on these two counts under the first pong of the *Siegert* test.

Yet, as indicated above, Plaintiff has stated a plausible Fourteenth Amendment procedural due process claim to would survive a Rule 12(b)(6) dismissal – Defendant wrongfully and unreasonably interfered with Plaintiff's relational rights with her mother without providing Plaintiff due process. Still, Defendant is entitled to qualified immunity as to the Fourteenth Amendment claim brought against her because Plaintiff failed to demonstrate that at the time

17

Defendant committed the challenged acts, this right was clearly established in the Sixth Circuit – either the liberty interest in an adult child's relation with a parent or in any predeprivation process related to such a right.[7]

Plaintiff bears the burden of demonstrating that the right violated was "clearly established" at the time the defendant acted.

> If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow*, 457 U.S. at 818.

The liberty interest in the adult child-parent relational rights and its procedural due process protections discussed in the preceding section were not clearly established at the time of Defendant King's actions, nor are they clearly established now.  Accordingly, Defendant King is entitled to qualified immunity as to Plaintiff's Fourteenth Amendment claim.

### 4.  42 USC § 1985

 Plaintiff claims that Defendant violated her rights pursuant to 42 USC § 1985, but fails to state a ground upon which such relief could be granted.  A cause of action under § 1985 requires a showing that 1. Defendants conspired, 2. For the purpose of depriving either directly

---

[7] As noted the dissenting opinion in *Zinermon*, there are significant arguments that could be made that predeprivation process of any such liberty interest in a case such as this is not practicable, and thus postdeprivation process is sufficient satisfy the due process clause.  *See also* footnote 3as to how "solidly" established the footings of *Zinermon* are

or indirectly, any person equal protection of the laws or of equal privileges and immunities, 3. The defendants acted in furtherance of the object of the conspiracy and 4. Another was injured in his person or properties or deprived of having and exercising any right or privilege enjoyed by a citizen of the United States. *Smith v. Gibson*, 524 F. Supp. 664, 668 (E.D. Mich. 1981) (citing *Griffin v Breckenridge*, 403 US 88, 102 (1971)). As to the second element of deprivation, the defendants must be motivated by class-based animus, the class must be clearly defined and a showing of the discriminatory motivation in the denial of the rights must be made. *Id*. At 668.

Plaintiff, in the case before this court, has failed to state that she was a member of a clearly defined class or that Defendant was motivated by a class-based animus. For these two separate reasons, Plaintiff's 42 USC § 1985 claim must be dismissed.

## III.    RECOMMENDATION

For the reasons stated above, it is Recommended that Defendants' motion to dismiss be **GRANTED** and that Plaintiff's Complaint **BE DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for her failure to state a claim upon which relief may be granted.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.  A

party may file a reply brief within 5 days of service of a response.  The reply shall be not more

than five (5) pages in length unless by motion and order such page limit is extended by the

Court.

Dated: August 8, 2007                              s/Steven D. Pepe
Flint, Michigan                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 8, 2007</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Mark V. Schoen</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Dawn Kyle, 3337 S. Bristol,Ste. 332, Santa Ana, CA 92704</u>

<u>s/ James P. Peltier</u>

James P. Peltier

Courtroom Deputy Clerk

810-341-7850

pete__peltier@mied.uscourts.gov